JOPLIN CEMENT COMPANY, B. W. QUISENBERRY and C. H. BATHURST (DUNCAN-KLANER LUMBER COMPANY, INTERVENOR), APPELLANTS, v. GREENE COUNTY BUILDING AND LOAN ASSOCIATION ET AL., RESPONDENTS.—74 S. W. (2d) 250.

Springfield Court of Appeals.    August 24, 1934.

*S. A. Pearson* for plaintiffs.

*George V. Farris* for intervenor, appellants.

*Hamlin, Hamlin & Hamlin* for respondent, Greene County Building & Loan Association.

BAILEY, J.—The plaintiffs and intervenor are all mechanic lien claimants and in this suit have attempted to establish their respective liens against certain real estate as entitled to priority over the lien of defendant Greene County Building & Loan Association, the latter lien being a deed of trust against said property securing a loan in the sum of $4000. This is the second appeal in this case to this court, the first appeal being reported in 34 S. W. (2d) 529, where the facts are more fully set forth. We shall state only such additional facts as seem necessary to a clear understanding of the issues involved on this appeal. In the former appeal, judgment was for the mechanic lien claimants, but was reversed, largely because plaintiffs failed to prove any title, equitable or legal, in the alleged owners of the property at the time their respective liens were alleged to have accrued. On a new trial there was proof of, equitable title but judgment was for defendant Greene County Building & Loan Association and plaintiffs have appealed.

On the 12th day of February, 1928, Walter Harty entered into a written contract with one Clara Barr, by the terms of which, the said Walter Harty agreed to purchase and Clara Barr agreed to sell a certain tract of land in Newton County, Missouri, described as Lot No. 13 in Modoc Acres, a Subdivision of the Southwest Quarter of Section 23, Township 27 of Range 33, for the agreed price of $650, of which $32.50 only was paid at the time. Under the terms of the contract the buyer was entitled to immediate possession of the premises and did enter into the possession of same. He then began the erection of some improvements and first built a garage thereon where he and his wife Mable I. Harty lived for a time. They received a deed to the property August 3, 1928, which deed was made to Walter D. Harty and Mable I. Harty, husband and wife. Prior thereto the Hartys had negotiated the loan with defendant, Greene County Building & Loan Association for $4000 secured by a deed of trust on Lot 13 in Modoc Acres and recorded July 28, 1929. Out of this loan was first paid the sum of $615 to Clara M. Barr as the balance of the purchase price for said real estate. The remainder of the loan was paid out by Mr. Kesterson, representing defendant, in payment of bills for material and labor which went into the house in question. On the 15th of August, 1928, Mr. Kester-

son paid all the bills then accrued in full and at the same time notified all the materialmen, including these plaintiffs and intervenor, that the funds were exhausted and not to furnish any more material and not to look to them for any more money. There is no evidence that Kesterson had any authority from the Hartys to end their dealings with the materialmen. There was some evidence that at about this time the Hartys were undertaking to refinance the building operations through the Bankers Mortgage Company, but these negotiations failed. The evidence further shows that the Hartys had a complete plan of the dwelling house which they were erecting but that no contracts to furnish all the material were entered into, except for the roof, but the material was furnished on orders from the Hartys from time to time as needed. There is no substantial proof that the work of erecting the house at any time ceased or was abandoned prior to its completion and plaintiffs were the same materialmen who had furnished materials before the 13th day of August, 1928, the date when they were notified by Kesterson, to furnish no more material. The first work done on the property was some time prior to the date of the deed of trust but the exact date when the "first spade was turned" is not shown. No contention is made that the deed of trust was given before the first material was furnished or that the liens were not filed within the time required by law.

As heretofore indicated the trial court decreed a prior lien in favor of the Greene County Building & Loan Association, allowing priority for the full amount of their $4000 loan. This is assigned as error. There are two phases of the question of priority, which should be considered separately. The first is, as to defendant's right to priority for the purchase money in the sum of $615 paid by it at the time the Hartys received their deed. We think there can be no doubt that as to the money advanced to pay the purchase price for the real estate in question defendant had the better and superior lien. In so far as appears from the record the erections were commenced on the premises without the knowledge or consent of Clara M. Barr, the original owner, by Harty who, at the time, had only a contract with Clara M. Barr for the purchase of the land. The money was advanced by defendant for the deed and constituted a part of the loan secured by the deed of trust in question. It is true that the contract for purchase vested the Hartys with a sufficient equitable title to lay a foundation for the mechanic liens. [Waters v. Gallemore, 41 S. W. (2d) 870.]

But such liens would not be superior to a purchase money mortgage, for the purchase of the lot itself upon which the improvements were erected, although such mortgage was given after the improvements were commenced. [Schroeter Bros. Hardware Company v. Croatian "SOKOL" Gymnastic Assn. et al., 58 S. W. (2d) 995, l. c. 1002, 332 Mo. 440; 40 C. J., par. 378, p. 296.]

The other question as to priority between the deed of trust and the several mechanic liens is whether or not their liens for material furnished after defendant notified them it would not be responsible for such materials and further notified them to furnish no more material, relate back to the commencement of the improvement.

Section 3156, Revised Statutes of Missouri 1929, provides for a lien upon the building and land upon which it is situated for all, "who shall do or perform any work or labor upon or furnish any material . . . for any building . . . . under or by virtue of any contract with the owner or proprietor thereof, his agent, etc." Section 3163, Revised Statutes of Missouri 1929, provides that such mechanic liens shall be preferred to all other encumbrances "subsequent to the commencement of such buildings or improvements." It has long been settled, under those sections, that the lien for labor and material is paramount to the lien of the mortgage given after the improvement or erection is commenced and before the material is furnished or the work done. [Dubois v. Wilson's Admr., 21 Mo. 213; Hydraulic Press Brick Co. v. Bormans, 19 Mo. App. 664; Nold v. Ozenberger, 152 Mo. App. 439, 133 S. W. 383.]

Defendant takes the position however, that where, as here, the holder of the deed of trust pays all bills due for material and labor to a certain date and at that time notifies all materialmen who had been furnishing material for the erection of the improvement, not to furnish further material, their lien becomes subordinate to the lien of the deed of trust for material furnished after that date, although the deed of trust was not before then superior to their right to establish a mechanic's lien. In support of this theory we are cited to the case of May v. Mode et al., 142 Mo. App. 656. That case is authority for the rule that, where, after a building has been partly erected under a contract providing for its completion, the work is stopped and the contract abandoned, and a deed of trust is placed on the property, and, thereafter, a new contract is made providing for the completion of the building, the latter contract does not relate back to the original abandoned contract and work, so as to give a mechanic's lien for work done under the second contract priority over the deed of trust. In that case the new contract was made with different contractors from the original contractors, and it was held there was no privity between them and that the lien for the new work could not be carried back to the commencement of the building, but dated from the recommencement of the building. In the case at bar there is no substantial evidence that the work was ever abandoned. The same parties who had previously furnished material are the ones now seeking to establish their lien for materials furnished. We know of no case which announces the rule that the mortgagee may stop the work and prevent the owner from completing a structure already in the course of erection at the time the mort-

gage is given, at least prior to default in the payment of the mortgage note or interest thereon and the taking of possession by the mortgagee. The mortgagee has no right, until default or condition broken or by special agreement, to prevent the owner of the land from dealing with the land as the owner thereof, so long as his security is not impaired. [Schulenburg v. Hayden, 146 Mo. 583, 48 S. W. 472; Masterson v. Railroad, 72 Mo. 342; 41 C. J., p. 622, par. 594.]

In this suit the deed of trust was placed upon the property after the building was largely completed and the loan was made with knowledge of the unfinished condition thereof and in consideration of the building so being erected. It must have been within the contemplation of all parties concerned at the time the loan was made that the building would be completed. If the work had been abandoned and later resumed under a new contract the mechanic's lien for the new contract would be subject to the deed of trust, but such is not this case. [Schroeter Bros. Hardware Co. v. Croatian "SOKOL" G. Assn., supra, l. c. 1003; Gardner v. North Kansas City Alfalfa Mills, 61 S. W. (2d) 374.]

It is contended that the description of the property contained in the lien papers and petition is insufficient to entitle plaintiffs to enforce a lien. We think there can be no doubt that the description was sufficient within the meaning of Section 3161. It was the same description contained in the deed to Hartys and in defendant's deed of trust, and was certainly sufficient to identify the land upon which the improvements were being erected.

Defendant contends that since the Hartys obtained title to the land as husband and wife thus creating "an estate by the entirety," the estate could not be subjected to a materialman's lien, unless both the husband and wife were bound by a contract to pay or unless when one alone contracts he or she is acting as the owner or agent of the other. The same contention was made in the case of Dierks & Sons v. Runnalls, 54 S. W. (2d) 447. It was there held that "At the time the conveyance was made, the right of lien existed, and therefore the conveyance did not have the effect of transferring any interest or right in the premises so far as plaintiffs (the materialmen) are concerned." In this case Walter D. Harty was the sole equitable owner at the time the material was first brought upon the property. The lien then commenced and under the decision above cited it can make no difference that the title was afterward taken in the name of both the husband and wife or that she was made a party to the proceedings. We rule this point against defendant.

What we have said sufficiently disposes of all the issues in the case. We hold that as to the purchase money, to-wit: $615, with interest, secured by the deed of trust, defendant has a superior lien; that the plaintiffs and intervener are entitled to a judgment establishing their liens as superior to the deed of trust except as above

set forth. The judgment is therefore reversed with directions to enter judgment in accordance with the views herein expressed. *Allen, P. J.,* and *Smith, J.,* concur.